### UNITED STATES v. RILEY.

(Circuit Court, D. Kentucky. December 17, 1895.)

VIOLATION OF CIVIL SERVICE LAW—INDICTMENT AND PROOFS—VARIANCE.

An indictment under the act of January 16, 1883, charged a deputy collector of internal revenue with being unlawfully concerned in soliciting and receiving indirectly contributions for a political purpose from certain storekeepers and gaugers, whose names were to the grand jury unknown. On the trial it was shown that the contributions were received by another under defendant's control and supervision, and that the names of the storekeepers and gaugers from whom the contributions were received were in fact known to the grand jury. Held, that these proofs made out a case of "being concerned in receiving indirectly," within the meaning of the indictment, but that, as the names of the persons averred to have been unknown to the grand jury were in fact known to them, this made a fatal variance between the indictment and the proofs.

This was an indictment against William E. Riley for violating the provisions of the act of January 16, 1883 (section 11), forbidding any officer, etc., of the United States to "directly or indirectly solicit or receive or be in any manner concerned in soliciting or receiving any assessment, subscription or contribution for any political purpose, whatever, from any officer, clerk, or employé, of the United States," etc. One Albert Scott was at the same time separately indicted for being concerned in the same transactions, and an opin-

ion was heretofore rendered overruling demurrers to these indict-ments. That opinion was entitled U. S. v. Scott, 74 Fed. 213. The present case, however (U. S. v. Riley), was first called for trial. The evidence for the government being completed, counsel for defendant have moved for a peremptory instruction in his favor.

William M. Smith, U. S. Atty.

A. E. Wilson, Burton Vance, and C. H. Gibson, for defendant.

TAFT, Circuit Judge. I have no doubt what my duty is in this case. It is a duty which I perform with great reluctance. The evidence in the case strongly tends to show that the defendant was a party, perhaps the chief party, to a conspiracy to evade a very important criminal statute of the United States,—that which denounces the offense, in a government officer or employé, of collecting for political purposes assessments or contributions from other employés. The evidence seems to show that there was an elaborate and deliberate conspiracy for that purpose, and that the defendant was perhaps the masterhand in carrying it out, and in devising the plan by which its discovery and proof should be difficult. What would be developed in his defense of course the court cannot state. The case for the government, however, is a strong one, and in that view the court is naturally reluctant to direct a verdict on what is, under the circumstances of this case, a technical ground.

It is objected that the defendant has not been given a fair opportunity to make out a defense, because he could not know until the trial the particular persons from whom these assessments were charged to have been collected. In this case the merits of that contention have no great weight. The assessment proven here is shown to have been a general assessment, with respect to which the defendant would seem to have had full knowledge or information. But the constitution requires that an indictment shall set forth the nature and character of the offense charged with sufficient particularity to enable him to make a defense, and certain rules have been laid down by the authorities which fix what are the material averments and what are the material specifications. With respect to larceny, it is necessary to state whose property it is which the thief has taken. With respect to embezzlement, or all crimes against property, the same rule obtains. With respect to this statutory offense, it seems to me by analogy that the name of the officer or employé of the United States from whom the political assessment has been received is equally essential to the validity of the indictment. The framer of this indictment was evidently of that opinion, because he attempted to explain the omission of the names by the usual averment that the names of the storekeepers or gaugers from whom this assessment was collected or received were unknown to the grand jury. Mr. Jolly, who was district attorney at the time this indictment was found, has explained the reason why this course was taken, which was that the grand jury and he did not think that they could trace the assessments collected from any particular gauger into the particular funds received by the defendant. But it seems to me that the evidence before the grand jury, as the evidence here,

made a case against Riley, showing that he was unlawfully concerned in receiving all the assessments which are proven to have been here collected. If that is the case, then the proof before the grand jury that any particular gauger paid an assessment was proof of the name of a person which should have been inserted in the indictment. My theory, and it seems to me the only proper theory, of the evidence is that Sheltman's reception of this money by direction of Riley, and under his control and supervision, was an unlawful reception of the moneys indirectly by Riley himself; at least that it showed Riley was unlawfully concerned in receiving indirectly the money; and therefore, if it could be definitely stated by the grand jury from what persons Sheltman's money was received, then it could be definitely stated from what persons Riley was concerned indirectly in receiving money; and as unquestionably it did appear to the grand jury that Sheltman had received political contributions from some 25 or 30 storekeepers and gaugers whose names were known to the grand jury, there is a fatal variance between the averment in the indictment that the names were unknown to the grand jury and the proof adduced before this jury. All the authorities sustain this view. Rex v. Walker, 3 Camp. 264; State v. Wilson, 30 Conn. 500; White v. People, 32 N. Y. 465; Guthrie v. State, 16 Neb. 667, 21 N. W. 455; Whart. Cr. Pl. & Prac. § 112. I shall therefore direct a verdict in favor of the defendant in this case. The acquittal thus directed will not bar prosecution under an indictment in which the names of the persons solicited shall be correctly set out, and, but for the fact that the statute of limitations has now run against a new indictment, I should deem it my duty to direct the district attorney to begin proceedings looking to a reindictment of the defendant.

The opinion which I have already filed in the case upon the demurrer I shall modify in one respect, because I think, from an examination of the authorities, that it perhaps states the case too strongly. What I said was that it must appear in proof, to sustain the indictment, that the persons referred to were not actually known to the grand jury. I do not think that quite states the law; at least it may mislead. If it does not appear in proof one way or the other, then the finding of the indictment, and the averment in it that the necessary names were unknown, raise the presumption that the persons referred to were not known, even if they appear on the stand at the trial. It must appear affirmatively in proof that they were known to the grand jury before that can be used as a reason for asserting a variance, and therefore I shall modify the language of the opinion to read thus: "If it appear in proof, however, that the persons referred to as unknown were actually known to the grand jury, then there is a fatal variance." Guthrie v. State, 16 Neb. 667, 670, 21 N. W. 455; Com. v. Gallagher, 126 Mass. 54; Com. v. Hill, 11 Cush. 137; Rex v. Bush, Russ. & R. 372; Whart. Cr. Pl. & Prac. § 113.

The foregoing opinion was delivered in the absence of the jury. After the return of the jury, the court continued as follows: Gen-

tlemen of the Jury: After listening to the arguments of counsel, and giving a consideration to the allegations of the indictment, I find that there is a fatal variance between the proof offered here and the averments of the indictment, in this: that the indictment avers that the names of the storekeepers and gaugers from whom the assessments were received by Riley were unknown to the grand jury. In my opinion, all the evidence in the case tends to show—I mean the evidence for the government (what the evidence for the defendant would be I cannot say)—all the evidence now before the court tends to show that Riley was unlawfully concerned in the receiving of the money which Sheltman received, and Sheltman is shown by the evidence to have received, with the exception of a percentage collected by Barnes, Heinig, and Neiman, all the assessments which Barnes and Heinig collected. The evidence brought out before you also shows that the grand jury were advised by the witnesses sworn before them of the names of some 25 or 30 storekeepers and gaugers from whom these assessments were collected. In my view of the law, it was therefore the duty of the grand jury to have included in the indictment the names of those who were known, and, this not having been done, the proof here does not sustain the indictment as it is charged. I must, therefore, direct you to return a verdict for the defendant. You do this upon the responsibility of the court.