SHAW v. UNITED STATES.

(Circuit Court of. Appeals, Sixth Circuit.　July 13, 1910.)

No. 2,020.

1. GRAND JURY (§ 15*)—COMPETENCY OF JURORS—"CIVIL OFFICER."

　　A practicing attorney is not a "civil officer" within Ky. St. § 2248 (Russell's St. § 3061), rendering such officers incompetent to serve as grand jurors.

　　[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 35, 36; Dec. Dig. § 15.*

　　For other definitions, see Words and Phrases, vol. 2, p. 1198.]

2. POST OFFICE (§ 48*)—INDICTMENT—"ARTICLE OF VALUE."

　　Money is comprehended by the term an "article of value" within an indictment of a railway postal clerk for secreting and embezzling a letter containing "articles of value."

　　[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 66–80; Dec. Dig. § 48.*]

3. POST OFFICE (§ 48*)—LETTERS CONTAINING ARTICLE—INDICTMENT—SUFFICIENCY.

　　An indictment of a railway postal clerk for embezzling a letter containing "articles of value," to wit, "$12 in money of the United States," which letter was addressed to a specified person at a specified address, it being alleged that a further description of the letter and its contents is unknown to the grand jurors, sufficiently describes the money.

　　[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 66–80; Dec. Dig. § 48.*]

4. POST OFFICE (§ 48*)—LETTERS CONTAINING ARTICLE—INDICTMENT—REQUISITES.

　　An indictment of a railway postal clerk for secreting and embezzling a letter containing an article of value need not describe the article with the same precision as in a prosecution for forgery or larceny, but the article must be stated.

　　[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 66–80; Dec. Dig. § 48.*]

5. POST OFFICE (§ 48*)—LETTERS CONTAINING ARTICLES—INDICTMENT—SUFFICIENCY.

　　An indictment of a railway postal clerk for secreting and embezzling a letter containing an article of value sufficiently describes the article if it apprises defendant of the charge against him and protects him against a second prosecution for the same offense.

　　[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 66–80; Dec. Dig. § 48.*]

6. CRIMINAL LAW (§ 1036*)—CONFESSION—FAILURE TO OBJECT—EFFECT.

　　That accused's confession was not objected to by him when offered as not being voluntary, warrants disregard of an objection on appeal on that ground.

　　[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2639; Dec. Dig. § 1036.*]

7. CRIMINAL LAW (§ 519*)—CONFESSIONS—ADMISSIBILITY—VOLUNTARY CHARACTER.

　　Confessions not voluntarily made are inadmissible against accused; he being protected against confessions obtained by duress or through hope or fear.

　　[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1163; Dec. Dig. § 519.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

**8. CRIMINAL LAW (§ 519\*)—CONFESSIONS—VOLUNTARY NATURE.**

A confession is not shown to be involuntary merely because made while under arrest or on questions by an officer.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1167; Dec. Dig. § 519.\*]

**9. CRIMINAL LAW (§ 531\*)—CONFESSIONS—VOLUNTARY NATURE—EVIDENCE—SUFFICIENCY.**

Evidence *held* sufficient to show prima facie that a confession made by a railway postal clerk to secreting a letter containing money was voluntary.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1215; Dec Dig. § 531.\*]

**10. CRIMINAL LAW (§ 781\*)—CONFESSIONS—INSTRUCTIONS.**

On request by accused it is proper to specially instruct that a confession must be found to have been voluntarily made before it could be considered.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1864; Dec. Dig. § 781.\*]

**11. CRIMINAL LAW (§ 692\*)—CONFESSIONS—VOLUNTARY NATURE—WAIVER OF OBJECTIONS.**

Accused did not waive the right to question the voluntary nature of his confession by motion to strike it out by failing to cross-examine as to its voluntary nature.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1629; Dec. Dig. § 692.\*]

**12. POST OFFICE (§ 49\*)—LETTERS CONTAINING MONEY—EVIDENCE.**

In a trial of a railway postal clerk for embezzling a letter containing money, the fact that the letter which was introduced in evidence was found in his pocket was some evidence tending to show intent to embezzle.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86; Dec. Dig. § 49.\*]

In Error to the District Court of the United States for the Western District of Kentucky.

George B. Shaw was convicted of secreting and embezzling a letter as a railway postal clerk, and he brings error. Affirmed.

W. M. Smith, for plaintiff in error.

George Du Relle, for the United States.

Before WARRINGTON and KNAPPEN, Circuit Judges, and McCALL, District Judge.

KNAPPEN, Circuit Judge. The defendant was indicted under the first clause of section 5467 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3691), charged with having, while he was employed by the United States as a railway postal clerk, feloniously secreted and embezzled a certain letter which had come into his possession by reason and because of his employment in the postal service of the United States; said letter being alleged to contain certain articles of value. A prior indictment against this defendant was considered by this court in Shaw v. United States, 165 Fed. 174, 91 C. C. A. 208. Upon the trial under this latter indictment conviction was had and sentence thereon imposed. Before the trial the defendant moved to quash the indictment upon the ground that the foreman of

the grand jury which found the indictment was incompetent to serve as a grand juror from the fact that he was a practicing attorney and a member of the bar of the court into which the indictment was returned. After the hearing upon the facts, both by affidavits and oral examination of the foreman, the court overruled the motion to quash on the grounds: First, that the foreman was not a practicing attorney; and, second, that even if he were, he was not thereby disqualified. The overruling of the motion to quash is assigned as error.

Section 800 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 623) provides that:

"Jurors to serve in the courts of the United States, in each state respectively, shall have the same qualifications, subject to the provisions hereinafter contained, and be entitled to the same exemptions, as jurors of the highest court of law may have and be entitled to at the time when such jurors for service in the courts of the United States are summoned."

Section 2248 of the Kentucky Statutes (Russell's St. § 3061) provides that:

"A grand jury shall consist of twelve persons, and no person shall be qualified to serve as a grand juryman unless he be a citizen and a housekeeper of the county in which he may be called to serve, and over the age of twenty-one years. No civil officer (except trustees of schools) no surveyor of a highway, tavern keeper (or persons of several other enumerated classes) shall be competent to serve as a grand juror; but the fact that a person not qualified or competent served on a grand jury shall not be cause for setting aside indictments found by such a grand jury."

The defendant contends that a practicing attorney, although not mentioned by name in the statute, is a civil officer within the meaning of the Kentucky statute. The Court of Appeals of Kentucky has held that impaneling as a grand juror one who is not a housekeeper is a substantial error in the formation of a grand jury, and can be taken advantage of on motion to set aside the indictment (Commonwealth v. Smith, 10 Bush, 476); but that the fact that a member of a grand jury was a school trustee (such trustee being held under the statute as then existing to be a civil officer) is not ground for setting the indictment aside (Commonwealth v. Pritchett, 11 Bush, 277); the rules applicable to each class being held to be different from the fact that the "disqualifications" created by the first clause were adopted for the protection of citizens, and the provisions as to "incompetency" contained in the second clause were created in part for the benefit of the class of persons therein named, "and also to leave grand juries unembarrassed by the presence of those whose pursuits in life were most likely to direct the attention of grand juries to them." These decisions were made before the adoption of the provision in the statute that:

"The fact that a person not qualified or competent served on a grand jury, shall not be cause for setting aside indictments found by such a grand jury."

It is urged by defendant that the statutory provision last quoted, as well as the Kentucky decisions just referred to, are not effective in the federal courts; in other words, that if a grand juror was incompetent under the Kentucky statute, he would be disqualified under the federal statute, notwithstanding the Kentucky statute forbade the setting aside of an indictment found by reason of such disqualification or

incompetency; it having been held in Crowley v. United States, 194 U. S. 461, 24 Sup. Ct. 731, 48 L. Ed. 1075, that the disqualification of a grand juror, prescribed by statute, is a matter of substance, which cannot be regarded as a mere defect or imperfection within the meaning of section 1025 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 720).

We do not find it necessary to determine this question, in view of the conclusion we have reached as to the status of a practicing attorney as a civil officer. In support of his contention that a practicing attorney is a civil officer, the defendant cites In re Wall (C. C.) 13 Fed. 814, and In the Matter of Mosness, 39 Wis. 509, 20 Am. Rep. 55. In the Wall Case, which was a proceeding to disbar an attorney, it was said that "an attorney is an officer of the court." In the Mosness Case, which was an application for the admission of a nonresident of Wisconsin to practice in the court. of that state, the court, in denying the application on the ground of nonresidence, said:

"Attorneys and counselors of a court, though not properly public officers, are quasi officers of the state whose justice is administered by the court."

It is further urged that attorneys are within the class whose actions are liable to investigation by a grand jury by reason of certain statutes penalizing the engaging in practice by certain public officers, the defending by the law partners of certain prosecuting officers of those whom it is made the official duty of such officers to prosecute, the forming of a law partnership between clerks of certain courts and attorneys at law, and practicing law without a license. In our opinion there is no merit in the contention that a practicing attorney is a civil officer within the meaning of the Kentucky statute. While attorneys may be in a sense quasi public officers, they plainly are not, to the common understanding of mankind, civil officers. They are not, in our judgment, within either the letter or the spirit of the Kentucky statute. The correctness of this conclusion is confirmed by the language of the Kentucky statute prescribing the exemptions of petit jurors, in which "practicing attorneys" are specially enumerated in connection with a large number of other classes of persons, notwithstanding a previous designation of civil officers, thus evidencing the legislative understanding that practicing attorneys are not included in that term. In our judgment the motion to quash was properly denied. This conclusion makes it unnecessary to determine whether the juror was in fact a practicing attorney, or whether the motion to quash was seasonably made.

Upon the denial of the motion to quash the indictment, the defendant filed a general demurrer thereto, upon the ground that:

"Said indictment does not state facts sufficient to constitute any offense against the laws of the United States."

No specific defect in the indictment is pointed out in the record. On the contrary, the court in its opinion on the motion for new trial states that:

"When the demurrer was filed and came on to be argued, counsel for defendant distinctly avowed their inability then to see or state any defect in

the indictment, stating that the demurrer was formal and interposed so as to get any advantage that might thereafter develop."

Under the circumstances, it would seem hardly necessary to consider this demurrer. We shall, however, do so. The specific defect now urged is that money is not included in the general term "articles of value," and that, if so included, the description of the money contained in the indictment is insufficient in that the character and description of the currency is not given. There is plainly no merit in this criticism. Money is clearly included in the term "an article of value." Bromberger v. United States (Second Circuit) 128 Fed. 346, 63 C. C. A. 76. As to the description: The letter is described as containing "articles of value, to wit, $12 in money of the United States, and which said letter was then and there inclosed in a sealed and postpaid envelope, then and there addressed to 'Mrs. M. J. Blaufield, Tulane Hotel, Nashville, Tenn.,' and a further description of which said letter and its contents is to the grand jurors aforesaid unknown." It is urged that this description of the money is insufficient in an indictment for larceny, and that the same rule should prevail under this indictment. There are authorities which hold such description insufficient in a prosecution for larceny. There is, on the other hand, excellent authority that the description used in the indictment here would be good in a prosecution for forgery. Bishop's New Criminal Procedure, vol. 2, § 705. We see no reason why the same rule should not prevail in prosecution for embezzlement or larceny of money.

The gravamen of the charge in the indictment before us is, however, the secreting and embezzling of the letter, and thus while it is necessary that the letter contain an article of value, and that this article be stated, yet it is not necessary to describe it with the same precision as in a prosecution for forgery or larceny. See Rosencrans v. United States, 165 U. S. 257, 263, 17 Sup. Ct. 302, 41 L. Ed. 708. There was no request for a bill of particulars, nor anything to suggest that the description contained in the indictment was not sufficient to apprise the defendant of the charge made against him, as well as to protect him against a second prosecution for the same offense. This degree of certainty is all that is required. Jones v. United States (C. C.) 27 Fed. 447; Bromberger v. United States, supra, at page 351 of 128 Fed., at page 76 of 63 C. C. A. In our opinion the demurrer was rightly overruled.

The contention that verdict should have been directed for defendant because of the alleged falsity of the statement in the indictment that a further description of the letter and its contents was unknown to the grand jurors is without merit. The reference is not only to the letter, but to its contents, and thus extends to the subject of any further description of the money than that it is "$12 in money of the United States." This objection seems to rest upon the assertion of variance between the indictment and the proofs. United States v. Riley (C. C.) 74 Fed. 210. The latter are not, in our judgment, clearly at variance with the indictment. Moreover, the letter, envelope,

and money were received in evidence under an apparent disclaimer by defendant's counsel of any objection thereto.

Complaint is earnestly made of the action of the court in admitting evidence of an alleged confession by the defendant. The ground of the objection to the admissibility of the evidence is that the alleged confession was not shown to have been voluntary.

The testimony showed that defendant was a railway postal clerk, assigned to duty as transfer clerk; his duties including the transferring of mail from a mail box in the railway depot to the railway post office to which it belonged. The government's testimony tended to show that two post office inspectors, suspecting that defendant was embezzling valuable letters, deposited in the depot mail box a test letter containing $12 in currency, and so prepared as to suggest that the letter contained money; that defendant took the letter from the mail box and failed to deposit it in the proper railway post office. The testimony of one of the inspectors was, in substance, that, after examining the mail box and finding the test letter gone, he went to the post office; that the defendant was then there, having completed his duties; that the witness requested the defendant to go upstairs to the inspector's office, on the fifth floor of the building, and he did so; that the other inspector then stated to defendant his reason for asking him to come, viz., that numerous losses had been occurring in mail matter; that the two inspectors had been making an investigation of these losses, and asked defendant in effect whether he knew about them; that defendant stated he did know of some but not of all of them; that he was told that a test letter had been placed in the mail that was to go through his hands and did not come out; that defendant thereupon produced four $1 bills which he said he had got from the mail in the pouch en route through his hands to the train he met that afternoon; that he had destroyed the letter he got the money from and could not tell anything more about it. (The testimony as to the four $1 bills was afterwards withdrawn from the jury.) The witness further stated that defendant (who had not up to that time mentioned the test letter) was told that the letter containing the $4 was not the letter they were looking for; that at this time the witness, who was sitting by defendant at the table, reached over and drew from defendant's left side sack coat pocket the test letter in question (the upper edge of what proved to be the test letter having been seen extending from the edge of the pocket), together with another letter; that defendant, after first claiming that he did not know the letter was in his pocket, said in answer to questions that he had taken the test letter (together with the other letter) from the mail box with the intention of later taking the money out, as there appeared to be money in both of them, and then, likewise in answer to questions, "explained that he had been for several months taking letters of that class from the mails at that point and would take the money from them"; that defendant said he estimated the money he had so taken would aggregate about $200; that since his injury several years before in a railroad wreck he at times "felt an irresistible impulse or tendency to steal." The witness stated upon cross-examination that the door of his office had a spring lock,

180 F.—23

"and if the door was pushed shut it locked, and if it was not, it did not"; that "there was no locking of the door so far as any act of locking it is concerned"; that defendant was not told that "it would be better for him to confess up the matter," nor that the inspectors had "positive evidence against him," nor, in terms, that the inspectors had "positive evidence that he was guilty." The witness further testified that the test letter, when taken from defendant's pocket, was still sealed and unopened, and apparently just as the inspectors had prepared it.

The statement of the other inspector differed from that of the one before mentioned, so far as appears to us material, in these respects only, viz.: That this other inspector testified that defendant said that he had taken the test letter out of the box, intending to keep it, but had changed his mind on the way up and intended to remail it; that defendant ascribed his appropriation of valuable letters to an injury to his head suffered in the train wreck mentioned; that the witness talked with the defendant about an hour and a half, during the latter (and a considerable) part of which time the other inspector was absent getting out a warrant, the record not, however, showing that the reason for such absence was known to defendant; that the witness, when alone with the defendant, prepared a statement for the latter to sign, confessing to the taking of the test letter and other valuable letters; that defendant objected to signing the statement on account of matters contained therein other than those relating to the test letter in question (making no objection because of the letter in question), and because he wished to consult his attorney; that defendant later offered to sign it; but that the other inspector, who had come back, told him not to do so if there was anything in it that he objected to; and that the statement was not signed. The witness further testified that defendant was not in the room for an hour and a half "in order to try to get a confession and a signed statement from him." The testimony as to the attempt to get the signed statement was introduced through cross-examination by defendant's counsel, and the draft thereof was introduced in evidence by said counsel. No objection was made to the testimony upon the ground that the confession was involuntary. Before any testimony as to the statements made by defendant was given, the court, on its own motion, gave defendant's counsel permission to question the witness as to whether the statement made was "the result of any inducement offered to the accused to make that statement, any promise of reward." Counsel replied, "We do not care to ask him now," nor was that subject again referred to by counsel.

The defendant was sworn as a witness and denied that he had confessed to any theft, embezzlement, or secreting of money or valuable letters, or that he had in fact made such thefts, embezzlements, or secretings. He admitted that the test letter was found in his pocket in the inspector's office, explaining its presence there by the statement that in delivering letters from the box to the train he always carried them in his pocket, because he had the registered pouches to look after, and that the letter in question stuck to an insurance book which he

had in his pocket, and that he was not aware of the fact until the letter was found in his pocket during his interview with the inspectors. He testified that after he had entered the inspector's room the door was locked; that he was asked for all the money he had upon him and was accused of stealing from the mails; that he was told it would be better for him to make confession—easier on him. There was testimony that the defendant had been injured in a railway wreck, and that as a result of such injuries he was physically and mentally impaired; such impairment including a partial paralysis of his leg and arm and other parts of his body, lessened power of vision and hearing, impaired memory and absentmindedness, and a lessened sensibility of touch. There was evidence, however, that he had for several years satisfactorily performed the duties of transfer clerk. The defendant offered no requests for instructions, and took no exceptions to the charge of the court.

In our opinion the court was not in error in admitting the testimony of the inspectors as to the alleged confession. The fact that the defendant's confession was not objected to as not being voluntary is of itself sufficient to justify a disregard of the alleged error in admitting the testimony. But in our opinion the testimony would have been competent against objection. It is well settled that confessions not voluntarily made are inadmissible against an accused person, and the courts are astute, and properly so, in protecting the rights of accused persons against confessions obtained by duress or through hope or fear. The merest reference to authority is sufficient for the purposes of this opinion. Bram v. United States, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568; United States v. James (D. C.) 60 Fed. 257, 26 L. R. A. 418. On the other hand, the fact that a confession is made by an accused person, even while under arrest or when drawn out by the questions of an officer, does not necessarily render the confession involuntary. Sparf v. United States, 156 U. S. 51, 55, 15 Sup. Ct. 273, 39 L. Ed. 343; Perovich v. United States, 205 U. S. 86, 91, 27 Sup. Ct. 456, 51 L. Ed. 722. The testimony of the inspectors, if believed, showed prima facie a voluntary confession within the authorities. It would have been proper for the court, if requested by defendant, to have specially instructed the jury upon the subject of the necessity that the confession be found to have been voluntarily made before it could be considered by the jury; but such request was not made. The defendant was represented upon the trial by able counsel. The defendant did not, in our judgment, by failing to cross-examine as to the voluntary nature of the alleged confession, waive the right to further question the character of the confession by motion to strike it out; but such motion was not made. The court, in a fair charge, submitted to the jury the question of the weight and credibility of the testimony of the inspectors and of the defendant respectively, as to what occurred in the inspector's office. In our opinion there was no error in admitting the evidence of the alleged confession.

At the close of the government's case, and again at the close of all the evidence, the instruction of a verdict in defendant's favor was asked; counsel saying that he wished to state the reasons for such re-

quested direction. The court replied that he could not grant the motion, and that the reasons should not be stated in the presence of the jury, but that they might be put as fully as desired upon the record. This permission was not complied with.

Assuming that, if the testimony without such confession was insufficient for conviction, defendant might have raised the question of such admissibility by motion for a directed verdict, in our opinion, as already stated, the government's testimony presented a prima facie case of voluntary confession; and, even had the confession been excluded, the fact that the letter was admittedly found in defendant's pocket (the letter itself having been introduced in evidence without objection) was some evidence to go to the jury as to his intent to embezzle it.

We have examined all the errors assigned, whether discussed or not in defendant's brief. In our opinion defendant has had a fair trial.

We find no error committed to his prejudice, and the judgment must, accordingly, be affirmed.