## MURRAY v. UNITED STATES.*

(Court of Appeals of District of Columbia.  Submitted November 6, 1922.  Decided April 3, 1923.)

No. 3800.

1. **Criminal law ⬿476—Expert testimony wound was caused by blunt instrument held competent.**

In a prosecution for manslaughter of defendant's wife, expert testimony by a physician, who had performed the autopsy on the body of the wife and had described the wound on her skull which had caused her death, that the wound was caused by some blunt instrument, since a flat instrument could not knock out such a piece of the skull, was competent, and was not a mere guess or conjecture of the witness.

2. **Criminal law ⬿470—Expert can give testimony as to fact which jury was to find.**

The fact that the manner in which the wound which caused the death of decedent was produced was, under the issues, a question of fact for the jury to find, does not render expert testimony by a physician as to such manner incompetent.

3. **Criminal law ⬿1036(6)—Objection to form of question asked expert must be raised below.**

An objection to the form of a question asked an expert witness does not require reversal, where no objection to the form was made at the time the evidence was received.

4. **Homicide ⬿166(2)—Evidence of previous quarrels is admissible on question of motive.**

In a prosecution for the killing of defendant's wife, evidence of previous quarrels between defendant and his wife was admissible on the question of motive.

5. **Homicide ⬿166(2)—Remoteness of quarrels affects weight of evidence.**

The question of the remoteness of evidence of previous quarrels between defendant and his wife goes to the weight to be given the evidence by the jury as evidence of motive for the subsequent killing of the wife.

6. **Criminal law ⬿680(1)—Order of evidence is within court's discretion.**

The order in which the evidence in a criminal case may be received is largely in the discretion of the court.

7. **Criminal law ⬿409—Proof of corpus delicti held to render admissions competent.**

In a prosecution for manslaughter of defendant's wife, evidence that defendant and his wife had frequently quarreled before, that on the night she was killed he was seen to threaten her with a stick, on which she ran back into the house, where she was subsequently found dead with a wound in her skull caused by some blunt instrument, which probably could not have been caused by an accidental fall, held sufficient to establish the corpus delicti, so as to render evidence of admissions by accused competent.

8. **Criminal law ⬿409—Evidence held to show statement was voluntary.**

Evidence that, when the officers arrested defendant on the same night his wife was found dead, he made to them a statement that he had knocked her down, and that she must have received the wound which caused her death by striking against the rocker of a chair, with other facts and circumstances in the record, held to show that the statement was voluntary.

9. **Criminal law ⬿406(3)—Fact statement was made while in custody does not render it involuntary.**

The mere fact that a statement is made by accused to a police officer while accused is under arrest does not necessarily render it involuntary;

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 43 Sup. Ct. 703, 67 L. Ed. —.

but that fact is to be taken into consideration in determining whether the confession was made freely, voluntarily, and without compulsion or inducement, which is a test of its admissibility.

**10. Criminal law ☜1134(2)—All evidence must be considered by appellate court in determining whether confession was voluntary.**

The appellate court, in determining whether a confession was voluntary, must consider all the evidence in the record, including that given by the defendant after the confession was admitted, which tends to rebut that of the prosecution.

**11. Criminal law ☜1169(12)—Defendant's testimony to same effect as admission cures error in receiving admission.**

Error, if any, in receiving in evidence the statement made by defendant to a police officer while under arrest, was cured where defendant took the stand in his own behalf and testified to substantially the same facts as he stated to the officer, and especially where no objection was made to the evidence by a second officer as to the same statement.

**12. Witnesses ☜337(5)—Former convictions of accused can be shown to affect his credibility as a witness.**

Code D. C. § 1067, providing that previous conviction of crime shall not disqualify to testify, but that such fact may be shown to affect the credit of a witness, applies to a defendant, who has become a witness in his own behalf, so as to render admissible previous convictions for other offenses.

**13. Witnesses ☜337(5)—Former convictions for misdemeanors may be shown; "crime."**

Code D. C. § 1067, permitting evidence of former conviction of crime to be shown to affect the credibility of a witness, does not limit the proof to former convictions for felonies, since the word "crime," as commonly understood, includes both felonies and misdemeanors, and, if Congress had intended to limit the proof to felonies, it could have so stated.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Crime.]

**14. Witnesses ☜359—Remoteness of former convictions affects only weight as evidence.**

The remoteness of former convictions of accused, introduced to affect his credibility as a witness, goes only to the weight to be given to such convictions as evidence, and is to be considered by the jury in connection with other relevant testimony, including that of defendant that he had been in no trouble during the past 10 years.

**15. Criminal law ☜901—Motion for directed verdict is waived by subsequent offer of evidence.**

Defendant's motion for a directed verdict at the close of the government's evidence is waived by his thereafter introducing testimony in his behalf.

**16. Homicide ☜282—Evidence held sufficient to take to the jury the issue of defendant's guilt of manslaughter.**

In a prosecution for manslaughter of defendant's wife, evidence that defendant was alone with her when she was found dead, and that her death was caused by a wound, which could not have been self-inflicted and was probably not accidental, *held* sufficient to take to the jury the issue of defendant's guilt of manslaughter, notwithstanding his testimony that he struck her in repelling an assault by her on him with a knife, and that she must have received the injury when she fell.

**17. Criminal law ☜781(4)—Homicide ☜228(1)—Corpus delicti does not include agency of accused; instruction held properly refused.**

Corpus delicti of homicide consists of two elements, the death of the person alleged to have been killed and criminal agency as the cause of such death, and does not include the identity of defendant with that

criminal agency, so that a requested charge that, to render confessions admissible, the government must prove beyond reasonable doubt that a crime has been committed, and that there is a probability that defendant committed it, was properly refused.

Appeal from the Supreme Court of the District of Columbia.

Willis A. Murray was convicted of manslaughter, and he appeals. Affirmed.

H. S. Barger, of Washington, D. C., for appellant.

Peyton Gordon and J. H. Bilbrey, both of Washington, D. C., for the United States.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

BARBER, Acting Associate Justice. This is an appeal brought by the defendant below to reverse a judgment and sentence of 10 years imposed upon him following a verdict of guilty of manslaughter. The indictment is in two counts. The first in substance charges that the defendant on the 15th day of October, 1921, feloniously, willfully, and violently made an assault upon his wife, Estelle Murray, and that in making it he feloniously, willfully, and violently knocked her down, and in so doing gave her a violent mortal blow which caused her death. The second also charges a felonious and willful assault on his wife with a certain hard blunt instrument, a more particular description of which the grand jury could not give, and that she was killed by a blow with such instrument.

The defendant and his wife were at the time of her death living together at 25 Fenton street, in Washington. On the night of October 15, 1921, her dead body was found on the floor in one of the rooms in defendant's house. Her head was lying partially between the rockers of a rocking chair. There was blood on the floor near the head, and when first discovered defendant was washing or bathing her head. Defendant and his wife had been alone in the house, or near it, from about 7 o'clock of the evening of that day, and he was the only person there when his wife's body was found. There was some evidence tending to show there was a stain that looked like blood on the end of one of the rockers. There was a wound on deceased's head, more particularly hereinafter described, which caused her death, and there is no question as to the identification of the body. Defendant was arrested in another part of the city about 4:30 o'clock the following morning. The testimony as to other relevant facts will be referred to in connection with the consideration of the various assignments of error.

[1] 1. Error is alleged in permitting an expert medical witness to state, from his examination of the wound, what in his opinion caused it. The witness, Dr. Prentiss, who was called by the government, had testified that he performed the autopsy on the body of the decedent; that there was a small abrasion on the back of the left hand and a lacerated wound on the right temple, two inches above the ex-

ternal auditory canal, the wound being about one inch and three-quarters long extending downward and upward; that the skull was fractured in that region, a rather large triangular piece of bone being loose at the base of the wound; that the wound was lacerated beneath that, and that in his opinion the fracture of the skull and hemorrhage caused her death. He was then asked if he had made sufficient examination to form an opinion as to the cause of the wound. Defendant's counsel objected, on the ground that the question called for the mere conjecture of the witness and was entirely too broad. The answer, taken subject to defendant's exception, was:

"It was caused by some blunt instrument. A flat instrument could not knock out a triangular piece of bone and indent that end of the brain in the region covered by the laceration."

We see no error in the admission of this testimony. To indulge in any extended review of the cases on the subject of expert testimony would unwarrantably lengthen the opinion.

[2] It is urged that the question called for the mere guess or conjecture of the witness, and that the answer invaded the province of the jury. How the wound was produced was a vital issue, and the opinion of a qualified expert was admissible as aiding the jury to find the fact. Because the jury were to find the fact did not render the evidence inadmissible. Hopt v. Utah, 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708; Transportation Line v. Hope, 95 U. S. 297, 24 L. Ed. 477; Wigmore on Evidence, vol. 3, §§ 1921–1923; Atchison Co. v. Myers, 63 Fed. 793, 11 C. C. A. 439; American Agricultural Chemical Co. v. Hogan, 213 Fed. 416, 130 C. C. A. 52.

In his further testimony Dr. Prentiss gave a full explanation of the reasons why he concluded that the wound was caused by some blunt instrument. His opinion as to the cause of death and how the wound was produced was fully corroborated by another expert medical witness, who was present at the autopsy, whose testimony was received without objection.

[3] Defendant also urges here that the form of the question was objectionable. It is sufficient to say that no objection as to form was made at the time the evidence was received.

[4] 2. A witness for the government testified that he lived at 27 Fenton street, which was separated from defendant's house by a 10-foot alley, and that sometimes defendant and his wife had family troubles. The government's attorney claimed surprise in the witness' testimony, and for that reason without objection proceeded to cross-examine him. Among other things, the attorney asked the witness if he had not very recently told him that he knew these people and had often seen them fight? To which he answered in substance that he had told the attorney that last summer they had their little troubles. To this evidence the defendant's attorney seasonably objected, on the ground that it was too remote. The court overruled the objection, saying that the question of remoteness was for the jury. We see no error in this. Evidence as to the conduct of the defendant toward his wife and their relations was admissible on the question of motive.

Lomax v. United States, 37 App. D. C. 414; Moore v. United States, 150 U. S. 57, 14 Sup. Ct. 26, 37 L. Ed. 996; Thiede v. Utah Territory, 159 U. S. 510, 16 Sup. Ct. 62, 40 L. Ed. 237.

[5] The question of remoteness really goes to the weight to be given to the evidence by the jury and that was for them to determine.

3. Error is claimed in allowing Police Officer King to testify to a conversation he had with defendant on the morning of October 16th, while in his custody shortly after he was arrested. The officer had testified that he went to defendant's house before midnight, looked the house and yard over to see if he could find an instrument which might have caused the wound, that he found none, and that he and another officer then went to another place in the city, where they found and arrested the defendant. He was then asked the question:

"You may state whether or not he [defendant] made any statement to you at that time, and, if so, what did he say?"

The defendant's counsel then made the following objection:

"I do not think the government has shown the corpus delicti with sufficient certainty to warrant the reception of any statement or declaration or admission by the defendant. I think, in the exercise of a sound discretion by the court as to the order of proof, that they should be required to go further before confessions or such statements by—"

This objection was overruled, and exception allowed. The witness answered:

"We asked him if he had any trouble with his wife. He said, 'Yes.'"

Defendant's counsel then said:

"One thought further, if I may at this time, if your honor please. I think particular foundation should be laid for the introduction of a statement by the defendant."

To this the court replied:

"No foundation is necessary. You may start to cross-examine him, and find out the circumstances, if you want to."

Counsel for defendant said:

"I thought you might want to qualify him."

Without further objection the witness then proceeded to state in substance that the defendant then said he and his wife had had some trouble in the earlier part of the night; that she wanted to go out, and he did not want her to; that they quarreled about it; that she had an old case knife in her hand and was going to cut at him, and broke the blade off; that he had the blade and she the handle; that later he started toward the door; she acted as if she were going to strike at him; that he struck her and knocked her down; that he went to the front door and stayed a while; that she did not say anything or make any fuss; that he called to her and she did not answer; that he then examined her and found blood, got a lamp, found her bleeding, got a basin of water, and washed her head. The officer said he

asked defendant if he struck her with an instrument, or hatchet, or anything like that, and he said:

"No; she must have got the wound on her head when she fell."

[6] It is argued that this evidence was inadmissible (a) because in the exercise of a sound discretion the court should have required the government to prove the corpus delicti before it was received; and (b) because the government was not required to show as a condition precedent to its admission that the defendant's statement was voluntarily made to the witness. The order in which the evidence in a criminal case may be received is largely in the discretion of the court, and it frequently happens that evidence tending to establish the corpus delicti also tends to show the defendant's criminal agency.

[7] In the case at bar decedent's death had been established. Evidence had been received tending to show that for months before then defendant and his wife had quarreled and fought, as one witness said, "plenty of times"; that about two weeks before her death he had been out looking for her, saying he could not find her, and that "if she kept on he would kill her"; that after 11 o'clock of the night of October 15th he and his wife were on the street or in the alley near their house; that he was then in front of her with a stick in his hand, which he struck on the ground or on the sidewalk, upon which she ran back into or towards the house laughing; that there was nothing found in the room where her body was upon which she probably could have fallen accidentally and thereby have produced the wound, the location of which clearly negatives any probability that it was self-inflicted. This evidence, considered with that already referred to, sufficiently established the corpus delicti to justify receiving testimony of defendant's statements.

[8, 9] As to point (b), it is doubtful if the record already quoted raises the question. Defendant's counsel stated he thought the government should be required to go further and lay particular foundation for the introduction of the evidence. But what he meant thereby was not disclosed. However, assuming the question to be before us, we think the record as a whole shows that the statement made was purely voluntary. The mere fact that a confession is made to a police officer while accused is under arrest does not necessarily render it involuntary, but that fact is to be taken into consideration in determining the question. Bram v. United States, 168 U. S. 532, 558, 18 Sup. Ct. 183, 42 L. Ed. 568; Lomax v. United States, 37 App. D. C. 414; Shaw v. United States, 180 Fed. 348, 354, 103 C. C. A. 494. The true test of admissibility of confessions is that they are made freely, voluntarily, and without compulsion or inducement of any sort. Wilson v. United States, 162 U. S. 613, 16 Sup. Ct. 895, 40 L. Ed. 1090; Bram v. United States, supra.

[10] Of course, when the question of whether or not a confession is voluntary is raised in an appellate court, the entire record must be considered because, although when introduced evidence may be given so far tending to show that it is admissible as to justify receiving it, evidence on the part of the defendant may tend to rebut this, all of which must be reviewed on appeal. In the instant case we think the record shows that the statement made by the defendant to witness

was freely and voluntarily made, without compulsion or inducement of any sort.

[11] Not only this, but the defendant, when upon the stand in his own behalf, testified to substantially the same facts, although more in detail, as related by the witness, and in addition said that he made the statement to the officer that the latter said he did. This would cure the error in receiving the evidence, if any there were. Motes v. United States, 178 U. S. 458, 474, 20 Sup. Ct. 993, 44 L. Ed. 1150; St. Louis & S. F. R. Co. v. Duke, 192 Fed. 306, 112 C. C. A. 564.

It should also be noted that another police officer testified that he was present when the defendant made the statement to Officer King, that he heard it, and his testimony as to what defendant then said was substantially the same as that of King. The evidence of the second officer was received without objection.

[12] 4. Error is alleged because the government was permitted, under defendant's objection and exception, to inquire in cross-examination of defendant if he had not been convicted of some five misdemeanors, one in the year 1908, two in 1909, and two in 1911, all of which defendant admitted, but said he had not been in any trouble since 1911. Section 1067 of the District Code provides:

"No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, * * * but such fact may be given in evidence to affect his credit as a witness, either upon the cross-examination of the witness or by evidence aliunde. * * *"

It is argued that this statute—

"does no more, and was not meant to do more, than to remove the common-law disability which attached to witnesses generally who had been convicted of felonies."

It is unnecessary to enter upon a review of the numerous cited authorities, which are not altogether in harmony, but sufficient to say that there is no ambiguity in the section, and the defendant, having become a witness in his own behalf, comes within its provisions. The fact of former convictions of crime were properly shown to affect his credit.

[13] The claim that the word "crime," as used in the section, refers to felonies only, does not impress us, because, had Congress so intended, it were easy to so state, and also because the word "crime," as commonly understood, includes both felonies and misdemeanors. Bouvier's Law Dictionary, vol. 1, p. 729; Standard Dictionary; 16 Corpus Juris, p. 51; Callan v. Wilson, 127 U. S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223; State v. Henson, 66 N. J. Law, 601, 50 Atl. 468, 616; Commonwealth v. Hall, 4 Allen (Mass.) 305.

Thompson v. United States, 30 App. D. C. 352, 12 Ann. Cas. 1004, much relied on by defendant, is not in conflict with this view, because as the court pointed out, the so-called conviction shown there was not such.

[14] The remoteness of the convictions affected only the weight to be given to them as evidence, and was for the jury, who would in connection therewith consider other relevant testimony, including defendant's statement that since 1911 he had not been in any trouble.

[15] 5. There is no merit in the exception to the overruling of the appellant's motion for a directed verdict at the close of the government's evidence. By thereafter introducing testimony in his behalf, this exception was waived. Perovich v. United States, 205 U. S. 86, 27 Sup. Ct. 456, 51 L. Ed. 722.

[16] 6. At the close of the evidence the defendant again moved for a directed verdict, and argues here that it should have been granted, because the evidence "was not of such a character that reasonable men could say beyond a reasonable doubt that defendant was guilty." The defense was that decedent's death was accidentally caused by the defendant in repelling a threatened assault upon him by her. His evidence tended to show that a quarrel arose between them that night because she was not willing to let him go out; that when he persisted in doing so she approached him in a threatening manner, as if to strike, whereupon he struck her near the eye, but not with any weapon; that she immediately fell, and struck upon something which gave her the mortal wound; that the rocker was the only thing that he saw that could have caused it; that he did not intend to kill her, or inflict serious bodily harm; that she was addicted to the use of intoxicating liquors; that he did not have a stick in his hand the night of her death; that he never threatened to kill her, or to throw her out of the house; that they had fights; that his weight was about 103, and hers about 115, pounds.

We are unable to agree with counsel for defendant that on the whole evidence the court was required, or would have been justified, to grant the motion of defendant. As was said in Burton v. United States, 202 U. S. 344, 373, 26 Sup. Ct. 688, 695 (50 L. Ed. 1057, 6 Ann. Cas. 362) where a like motion was under consideration:

"There was beyond question evidence tending to establish on one side the defendant's guilt of the charges preferred against him; on the other side, his innocence of those charges. * * * The trial court was not authorized to take the case from the jury and direct a verdict of not guilty. That course could not have been pursued consistently with the principles that underlie the system of trial by jury."

[17] 7. The last question that requires consideration is the alleged error in the refusal of the court to grant defendant's prayer No. 4 on the subject of the corpus delicti in connection with the defendant's admission. So far as necessary to quote here, this prayer was:

"The fact that a crime was committed must be proved beyond a reasonable doubt by testimony independently of all admissions, declarations, or confessions of the accused, by which is meant that the government must prove beyond a reasonable doubt that a crime has been committed, and that there is a probability that the defendant committed it, and this must be established before consideration may be given to such admissions, declarations, or confessions of the defendant."

This is not sound law, because of the statement that the government must prove beyond a reasonable doubt that a crime has been committed and that there is a probability that the defendant committed it, before any consideration may be given to the admissions, declarations or confessions of the defendant. It is settled law that the corpus de-

licti cannot be proven by the confession of the defendant alone, but the probability that the defendant committed the crime is no part of the corpus delicti.

The corpus delicti, as relates to homicide, is composed of two elements: (a) The death of the person alleged to have been killed; (b) that some criminal agency caused such death. People v. Palmer, 109 N. Y. 110, 16 N. E. 529, 4 Am. St. Rep. 423; People v. Benham, 160 N. Y. 402, 55 N. E. 11; notes in case of Bines v. State of Georgia, 68 L. R. A. 33; notes to South Carolina v. Gillis, 5 L. R. A. (N. S.) 571; 7 Ruling Case Law, 774. Of course, both of these elements must be established beyond a reasonable doubt. When the jury find these established, the next inquiry is as to the identity of the criminal agency; and this, too, must be established beyond a reasonable doubt, but is properly no part of the corpus delicti. In making this inquiry it was proper for the jury to consider the defendant's statement or version of the affair before any other evidence tending to show his criminal agency was introduced.

The judgment below is affirmed.

Motion for rehearing denied April 21, 1923.

Petition for writ of error to remove cause to the United States Supreme Court denied May 5, 1923.