### BINGER v. WILDMAN.

#### No. 5859.

Court of Appeals of the District of Columbia.
Decided Jan. 29, 1934.

Leo P. Harlow and Marshall H. Lynn, both of Washington, D. C., for appellant.

W. Gwynn Gardiner and George A. Maddox, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This appeal is brought by Binger, the defendant below, from a judgment on a verdict in an action for malicious prosecution.

This action was a sequel to an automobile collision between the parties in Maryland.

On the evening of August 11, 1928, Binger, who is a resident of Maryland, with a place of business in the District of Columbia, was being driven home by his son's wife, and after their engine failed, they were taken in tow by the son with a truck.

Wildman was returning from his business in Maryland to his residence in Washington, and collided with Binger's car at a point in Prince Georges county several miles beyond the District line.

The collision occurred in darkness and rain, and the stories told by the parties thereto differ even more widely than such stories commonly do, as each says that he was disabled for a considerable time at the point of collision, while the other continued on his ruthless way, without offering assistance or giving his name.

But no one was injured, and each car ultimately reached its destination, the one in tow as before the collision and the other by its own power.

Binger promptly procured a Maryland warrant for the arrest of Wildman for violating a Maryland traffic regulation at the time of the collision, while Wildman sued Binger in the county court for negligent damage to his automobile.

This warrant was never served, and subsequently Binger by his affidavit procured a warrant of arrest charging against Wildman an assault with a deadly weapon, the weapon being his automobile as used in the collision.

This charge was an extradictable matter, and Wildman was arrested in Washington by Washington officers, and turned over to Maryland officers, by whom he was taken into Maryland and there released upon bond to appear for preliminary hearing before a justice of the peace.

This warrant, arrest, and confinement constitute the basis for this action in malicious prosecution. The preliminary hearing on the assault charge in Maryland seems to have been continued on several occasions, on each of which Wildman appeared with witnesses, but neither Binger nor the prosecuting officer appeared until November 20, when Binger appeared alone; the prosecuting officer did not appear; and Wildman attended with his attorney and three witnesses, being his father, his uncle, and his brother-in-law.

This hearing was held at night; an agreement of some sort was reached after conference among the parties; but no record thereof was made; and here again, as in the matter of the collision, their testimony is so hopelessly conflicting that both parties cannot be telling the truth.

On this day, before the hearing, two further warrants were issued by the magistrate on the oath of Binger for the arrest of Wildman on traffic charges based upon the collision.

These warrants were delivered to an officer present at the hearing, but were never served, and were withdrawn or dismissed of record the same evening.

The magistrate's records show that the warrant for assault was also dismissed on the same day, but do not show the hour of such dismissal, and the testimony of the magistrate leaves it uncertain whether the assault charge was dismissed before or after the agreement of the parties, which is a matter of controlling importance in the case.

In any event, no hearing was ever had before the magistrate in Maryland, but all warrants of arrest were there dismissed, and the civil suit for damages pending in the county seat was also dismissed.

In the malicious prosecution suit at Washington, Wildman and his witnesses testified that his attorney in the Maryland controversy, who was an experienced counsel, at the conference in or near the magistrate's court, and in the presence and hearing of Binger, stated that the assault charge had then already been dismissed; that Binger had procured that warrant only for purposes of extradition and not for prosecution, in order that the minor traffic warrants could be served in Maryland; that these warrants were then in the hands of the officer present for service; that upon them Wildman was to be then arrested, when he might be admitted to bail or might be taken to the county seat and jailed for hearing upon the traffic charges the next day; upon the trial of which he should surely be convicted and fined an amount equal or greater than the damages claimed in his negligence suit; that such procedure was common in such controversies; that a nonresident defendant—particularly a Washington motorist—had no chance of success in such litigation in Prince Georges county; and that his best course was a compromise on the best terms then obtainable.

Wildman testified that it was thereupon agreed that he should dismiss his damage suit and that Binger should dismiss the two traffic warrants, which agreement was performed on both sides. But that this agreement neither contemplated nor produced any action on the assault charge, which had been dismissed before the conference of the parties, and that his right to sue for false arrest or malicious prosecution was not discussed or compromised.

Binger testified that he neither participated in, nor was present at, the conference; nor overheard anything that was said by the participants; that he remained in the magistrate's office while the other interested parties removed to another room, and that from time to time Wildman's attorney came to him with offers or suggestions looking to a settlement of the entire controversy, including the assault charge and any right of action growing out of it; that such an agreement was finally reached; the assault charge was thereafter dismissed along with the other warrants, and the action for malicious prosecution was subsequently instituted in violation of the agreement.

Wildman's attorney testified in corroboration of Binger, and Wildman is represented by other counsel in this action.

While nine assignments of error appear in the record, the case turns upon the rulings relating to the compromise reached at the magistrate's court in Maryland and the conference which produced it.

The defendant by his pleas makes an issue of that agreement and its terms, and, since it remains in parol, the only way to decide that issue and to ascertain those terms is to hear what both sides say about it, so far as their evidence is competent.

And the trial court held the competency to depend on whether the defendant participated in the conference, or was present and heard what was said regarding himself, his conduct, his rights, and his contentions.

The plaintiff and two of his witnesses testified that the defendant was present; within hearing; and that when the agreement was reached said, "That settles it."

The defendant and the plaintiff's attorney testified that defendant was not present at any time during the conference; that he heard nothing; and said nothing, at that time and place.

With this contradiction of evidence, the question was left to the jury under the following instructions:

"The jury are instructed that if you believe from the evidence that the prosecution of the plaintiff Wildman under the warrant charging assault with intent to kill, sworn out by the defendant Binger, was discontinued at the instigation or procurement of Wildman or his attorney, Lansdale G. Sasscer; or that said prosecution was discontinued as the result of any compromise or settlement entered into by Binger in good faith with Wildman or his attorney; then your verdict must be for the defendant.

"There is testimony here with reference to a conference at Hyattsville between the plaintiff and his attorney and members of the plaintiff's family on the evening of November 20, 1928; and evidence has been given as to what was said at this conference. Before considering this evidence, you will first determine whether or not the defendant Binger participated in the conference or heard what was said. If you find that the defendant did not participate in the conference or did not hear what was said, then you will not consider any of the testimony with reference to that."

We think this instruction sufficiently covers the question now under consideration, and, while we recognize the latent danger in vicarious admissions by silence, this case falls clearly within the rule and the reason of the rule.

For, if the testimony of the plaintiff and his witnesses be accepted—as it was by the jury, and as Binger's brief admits it should have been—the defendant was present and within hearing during the conference when it was stated that the assault warrant was obtained from a wrongful motive; that it had then already been dismissed; and, consequently, that the basis of his position in the Maryland court and of his defense in the Washington court was gone.

The truth or falsity of these statements was within Binger's own knowledge; spoken under circumstances giving him opportunity for free reply; by persons naturally calling upon him to make reply, being his opponents in the controversy which they were gathered there to consider.

The defendant also presented an affirmative defense based on the alleged advice of the state's attorney to procure the warrants after a full statement of all the facts. And the state's attorney testified that he did advise the warrant for deadly assault upon Binger's statement that Wildman deliberately turned his motorcar across the road in an apparent effort to maim or injure him; that he struck him with the car; and then ran away, but that he (the state's attorney) would not have ordered the warrant if he had known that the parties had collided while attempting to pass on a country road on a rainy night.

The state's attorney was made a party to the action; he was not served with process, but appeared as a witness for the defendant; and at the close of all the evidence a nonsuit was taken as against him at the suggestion of the court.

On this aspect of the case the court instructed the jury as follows:

"There is testimony here tending to show that the defendant consulted the State's attorney, Mr. Parran, and acted on his advice before instituting the prosecution against the plaintiff on the charge of assault with intent to kill. The defendant in cases of this kind who in good faith consults the State's attorney is entitled to act on the advice given. But in seeking such advice he must in good faith first give a full statement of the facts of the case to the State's attorney.

"This action grows out of a collision on the evening of August 11, 1928. There is conflict in the testimony relating to this collision, and it is for the jury to determine from all the facts and circumstances in evidence just how it occurred.

"You will also consider, in determining that, whether or not the defendant Binger did consult the State's attorney and what, if anything, he said to the State's attorney concerning the collision. If you find that the defendant did consult the State's attorney, Mr. Parran, if you further find that at that time the defendant gave a full and true statement of the facts surrounding this collision to him, and was thereupon advised by Mr. Parran to procure the warrant for the arrest of the plaintiff on the charge of assault with intent to kill, and further find that acting upon such advice and under an honest belief that he was taking only such action as was warranted by law, the defendant caused the arrest of the plaintiff on such charge, then your verdict should be for the defendant."

We think this instruction correctly states the law governing this contention of the defendant.

The appellant also assigns error on the general charge of the court and his action on certain prayers offered by each of the parties, but six of the defendant's prayers were granted as offered, and the charge as a whole fairly states the law applicable to the case as presented.

The jury having found all questions at issue in favor of the plaintiff, under instructions stating the law with fairness to both sides, and having fixed the damages at a reasonable amount, the judgment will be affirmed.

Our conclusions are in part based upon the following authorities: Gunning v. Cooley, 280 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; McUin v. U. S., 17 App. D. C. 331; 1 Greenl. Ev. §§ 108 & 197; Benn v. Forrest (C. C. A.) 213 F. 763; Cross Lake Logging Co. v. Joyce (C.C.A.) 83 F. 989; Morris v. Norton (C.C.A.) 75 F. 912; State v. Dexter, 115 Iowa, 678, 87 N. W. 417; State v. Perkins, 10 N. C. 377; Des Moines Sav. Bank v. Colfax Hotel Co., 88 Iowa, 4, 55 N. W. 67; Faucett v. Bergmann, 57 App. D. C. 290, 22 F. (2d) 718; Murray v. U. S., 53 App. D. C. 119, 288 F. 1008; Capital Traction Co. v. Lyon, 57 App. D. C. 396, 24 F.(2d) 262; Smith v. U. S., 50 App. D. C. 208, 269 F. 860; Mandes v. Midgett, 49 App. D. C. 140, 261 F. 1019; 1 R. C. L. 478, § 15.

Affirmed.