**STATE of Missouri, Respondent,**

v.

**Henry Lewis BUTLER, Appellant.**

No. 52120.

Supreme Court of Missouri,
Division No. 1.

June 12, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Joseph S. Boland, Sp. Ass't. Atty. Gen., Clayton, for respondent.

Henry L. Butler, pro se.

HIGGINS, Commissioner.

Appellant waived jury trial and was convicted by the court of burglary, second degree, and stealing. Criminal Rule 26.01, V.A.M.R.; §§ 560.070, 560.110, V.A.M.S. Pursuant to such conviction and upon a further finding of prior conviction, the court assessed appellant's punishment at 5-years' imprisonment in the penitentiary for each crime and sentenced him accordingly, further ordering the sentences to run concurrently. §§ 556.280, 560.095, 560.110, V. A.M.S.

Appellant's point I claims that the "purported waiver of trial by jury * * * was in violation of the rights of the defendant for the reason that the court failed to ascertain on the record that the defendant was aware of his right to trial by jury; that he was aware of his right to refuse

to waive trial by jury and that his entering into such an agreement was not informed and reasonable. * * * It is simply not enough for his counsel to have had him sign a memorandum * * *."

■ Prior to the 1945 Constitution of Missouri a defendant charged with a felony could not waive trial by jury. State v. Talken, 316 Mo. 596, 292 S.W. 32, 33 [5]; and see also § 546.040, V.A.M.S. However, Article I, Section 22(a), Constitution of 1945, V.A.M.S., authorized waiver of jury trial in criminal cases, and the manner of such waiver is spelled out in Criminal Rule 26.01(b): "The defendant may, with the assent of the court, waive a trial by jury and submit the trial of any criminal case to the court, whose findings shall have the force and effect of the verdict of a jury. Such waiver by the defendant shall be made in open court and entered of record." Suffice to say that the constitutional authority was exercised and that the requirements of its exercise as defined by rule were satisfied by the memorandum, "Defendant hereby waives his right to trial by jury and agrees that the cause be tried to the Court," signed by Henry L. Butler and Hugh White, his attorney, "approved" by David J. Murphy, Judge, and filed prior to trial February 9, 1966. State v. Taylor, Mo., 391 S.W.2d 835, 836 [1]. See also Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854; Singer v. United States, 380 U.S. 24, 33, 34, 85 S.Ct. 783, 13 L.Ed.2d 630; Hatcher v. United States, 122 U.S.App.D.C. 148, 352 F.2d 364, 365 [2, 3]; Riadon v. United States, 6 Cir., 274 F.2d 304, 307 [4, 5]; Dranow v. United States, 8 Cir., 325 F.2d 481. There is nothing in the record to impeach the memorandum of waiver, and the affidavit attached to appellant's brief on appeal does not constitute any proof of appellant's charge.

Charles Brookshire, police officer of the St. Louis Metropolitan Police Department assigned to homicide, was on duty January 3, 1966, and at 3:30 a. m. was "cruising east on Olive Street" with his partner, Richard Mueller. As he approached the intersection of Grand and Olive he "observed a negro male with an arm full of clothing coming from the window of Downs Clothing Company, and threw the clothing at the curb." When first seen the subject "was reaching through the window. * * * He came out with an arm full of clothes * * * Turned around, threw the clothing into his car," a 1959 red and white Oldsmobile. "He then ran around to the driver's side, got in, and took off at a high rate of speed. * * * Then we pursued him east on Olive to Theresa, north on Theresa to Delmar, and west on Delmar, until we finally stopped him in the 3800 block of Delmar." This was accomplished with the aid of siren, flashing lights, and three shots. Officer Brookshire drove the police car and had the Oldsmobile in sight at all times. Upon stopping the pursued car the officers placed its driver, appellant Henry Lewis Butler, under arrest and searched his car. "In the front seat we found ten sport coats. * * * They had labels of Downs Clothing Store on them." The coats were seized and marked as evidence. "We then conveyed him back to the store, where we observed the window was broken." There was broken glass on the sidewalk on the north side of Downs Store, on the Olive Street side. There was also glass inside the store. "We then conveyed him to the Homicide office, where we questioned him about the above incident. * * * He stated he had been drinking at a tavern on Hodiamont Tracks and Taylor, at which time he borrowed a car from a friend of his, Jessie Harris. He went home, and then he rode around—I don't remember where —and he ended up on Grand and Olive, and he broke the window and took some clothes. * * * He parked the car on Olive, grabbed a rock he found and broke the window and took the clothes." This statement was voluntarily made and not reduced to writing. Officer Brookshire identified photographs of the automobile driven by appellant and of the broken

window, and identified a sports coat as one taken from the car.

Detective Richard Mueller of the St. Louis Metropolitan Police Department, Officer Brookshire's partner, also described events of this occasion. "We were approaching Grand Avenue, and we made the stop sign on the southwest corner, and while waiting for the light I observed on Olive Street, south of Grand Avenue, a person at the window, taking something out of the window, walked over to his car, and put it in his car. * * * It was clothing of some type. * * * He got in his car and went east on Olive Street to Theresa, then north on Theresa to Delmar, and we were pursuing him at the time. He then went east on Delmar, and during this chase we had our siren and headlights blinking, and when he crossed Grand Avenue on Delmar, in the 36 and 3700 blocks of Delmar, I fired three shots." The automobile was in sight during the entire chase. When it stopped, appellant was arrested "at which time we saw the clothing on the front seat." Detective Mueller also corroborated Officer Brookshire respecting the condition of the window at Downs Clothing Store and the statement made by appellant, and he identified a picture of the "ten jackets that were taken out of the window."

Harry Schneider, vice-president of Downs Men's Shop, helped close the shop about six o'clock in the evening, December 31, 1965. He and a Mr. Potter accomplished the closing so that the electric burglary alarm system would function. He next went to the shop about four o'clock a. m., January 3, 1966, upon a call from the police. "There was a policeman guarding the premises, and one of the glasses of the clothing room was all shattered. A large, concrete block had been thrown through it." There were glass fragments both inside and outside the store; the concrete block was 1½ or 2 feet inside the store. He identified the coats taken from the car driven by appellant as being property of Downs' Men's Shop from "the labels inside

the coat, and our price tickets * * *." The window rack ordinarily would contain thirty-five or forty coats. The total cost of the ten coats he saw at police headquarters belonging to Downs Store was about $225; the retail value about $425 or $435.

Henry Lewis Butler testified in his own behalf. "I was heading east, on Olive. * * * There was a light. I waited for the light. * * * I was on Olive, between Grand and Theresa, when I seen this bundle of whatever it was laying in the street. * * * I passed it about ten feet, and I backed up, I didn't know what it was. I got out and checked it, I didn't know what it was. I put it in the car, and I made a left on Theresa. * * * After I put it in my car I noticed it was coats, clothes. I didn't know if it was suits or sports coats." The clothing was on hangers. He denied stopping adjacent to the Downs Store, breaking the window, and reaching inside. He neither saw nor heard signs of police until he turned off Theresa on Delmar. "There was a light there. I went through the caution light, it was changing to red, I tried to beat it, and that is when the police said he saw me." He heard a shot when he was at Vandeventer and Spring. He stopped and the officers came up and cursed him. "He said, 'You went through that light up there. What the hell you think you're doing?' * * * He snatched me out of the car," after which the officer searched the car and found the clothes. The officers did not say anything about a burglary. "They took me to Downs. Then they took me to Central." While at Central, "One of the officers, he had typed out a statement, or something, and told me he would crack my head if I didn't sign it." He refused to sign. On cross-examination appellant admitted drinking "a couple bottles of beer * * * in the A.M.," January 3, 1966, at Taylor and Hodiamont Tracks. He had been "quite a few places."

Appellant, by his points III and IV, questions the sufficiency of this evidence to sustain his conviction. He argues, point

III, that "there is no evidence that (he) knowingly took property of Downs Men's Store with the intent to deprive them of its use and convert the same to his own use * * *. The evidence of the defendant is clearly that he found some clothing lying abandoned on the street and placed it without inspection into his automobile * * * for safe keeping." His argument in point IV is that the state's evidence "was incompetent, unbelievable and contradictory," in that neither officer said he "saw defendant personally break and enter * * * Downs Men's Store * * *," and "there was no testimony that the officers made and (sic) immediate and prompt attempt to halt the burglary they reported to have been in progress."

■ In reviewing a verdict, all evidence tending to support the verdict is considered as true, and all inferences favorable to it are indulged. State v. Reid, Mo., 391 S.W.2d 200, 204 [3]. Appellant was seen with his arm inside a broken window of Downs Clothing Store and to place an armful of clothing into an automobile. He was seen to get into the automobile and drive away at high speed. The witnessing officers pursued him, keeping him in sight at all times, finally stopping him with the aid of siren, flashing lights, and three pistol shots. Ten sports coats bearing labels from Downs, identified as belonging to Downs, and of a value of at least $225, were inside the car. Appellant admitted to the arresting officers that he broke the window and took some clothes. Such evidence proves all the elements of burglary and stealing; Section 560.110, V.A.M.S., supports inferences of a taking with intent to deprive the owner of his property, and overcomes and rebuts any inferences of finding and taking for safekeeping as suggested by appellant. Nor is there any contradiction, because the officers corroborated each other in respect to their efforts to apprehend the burglar and appellant admitted the breaking and taking. For similar cases on sufficiency of evidence to support convictions of burglary and stealing, see: State v. Hutchin, Mo., 353 S.W.2d 701; State v. Armstrong, Mo., 361 S.W.2d 811; State v. Zammar, Mo., 305 S.W.2d 441.

■ In connection with the alleged insufficiency of the evidence, and in point II, appellant contends that the court should have suppressed the ten sports jackets as evidence because the officers merely "saw the defendant run a red light or a caution light and after they stopped him to give him a ticket discovered the clothes found in his automobile." Assuming that appellant timely moved to suppress this evidence and made timely objection at the time of its admission, the point is not well taken. A favorable view of the evidence previously stated shows that the officers saw a man take clothing from Downs Store, put it in his car, and speed away. They pursued with the car and occupant in view at all times. When he stopped his car appellant was arrested and the jackets lying in view on the seat were seized. In these circumstances there was no unreasonable search and seizure of the jackets and upon subsequent identification by Mr. Schneider they were properly admissible in evidence. State v. Mallory, Mo., 336 S.W.2d 383, 385 [7]; State v. Cantrell, Mo., 310 S.W.2d 866, 869 [6].

The matters of record specified for review in Criminal Rule 28.02, V.A.M.R., are free of error.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.