**STATE of Missouri, Respondent,**

**v.**

**James Edward McGEE, Appellant.**

**No. 53523.**

Supreme Court of Missouri, En Banc.

Nov. 10, 1969.

Rehearing Denied Dec. 8, 1969.

Norman H. Anderson, Atty. Gen., John C. Danforth, Atty. Gen.-Elect, Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Donald U. Beimdiek, St. Louis, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, of counsel, for defendant-appellant.

DONNELLY, Judge.

Defendant, James Edward McGee, was convicted of murder in the second degree, under § 559.020, RSMo 1959, V.A.M.S., in the Circuit Court of the City of St. Louis, and his punishment under the provisions of the Habitual Criminal Act, § 556.280, RSMo 1959, V.A.M.S., was assessed at imprisonment in the custody of the State Department of Corrections for a term of fifty years. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court.

We first consider defendant's contention that the jury verdict is unsupported by the evidence. According to the evidence, the victim, Ida Mae Rooks, was stabbed at the corner of Grand and Page in the City of St. Louis, at approximately 8:30 P.M.,

February 20, 1967. She was dead on arrival at the hospital. Death was caused by "stab wounds." Defendant left the Harlem Tavern with Ida Mae Rooks at 8:15 P.M., February 20, 1967. One witness, who lived at 3603 Page, testified she heard a cry for help, looked out her apartment window, saw a woman and man struggling, and saw the man striking the woman. Another witness testified he looked out a window of a Chinese restaurant at the corner of Grand and Page, saw a man and woman struggling, and identified defendant as the man at the trial. The evidence is sufficient to support the verdict of guilty.

The next question for determination is whether a jury verdict of *eleven* citizens is constitutionally valid. On the second day of trial, one of the twelve jurors suffered a seizure and was hospitalized. Defendant wished to proceed with the trial and a memorandum was prepared and signed by defendant, by both lawyers, and by the trial court (See State v. Butler, Mo.Sup., 415 S.W.2d 784). Defendant contends that the verdict of guilty rendered by less than twelve jurors is a nullity. He is supported in this contention by State v. Mansfield, 41 Mo. 470 (1867), State v. Meyers, 68 Mo. 266 (1878), and State v. Sanders, Mo.Sup., 243 S.W. 771 (1922).

These cases were decided prior to the adoption of our 1945 Constitution. Article I, § 22(a), Const. of Mo., 1945, V.A.M.S., reads as follows:

"That the right of trial by jury as heretofore enjoyed shall remain inviolate; provided that a jury for the trial of criminal and civil cases in courts not of record may consist of less than twelve citizens as may be prescribed by law, and a two-thirds majority of such number concurring may render a verdict in all civil cases; that in all civil cases in courts of record, three-fourths of the members of the jury concurring may render a verdict; and that in every criminal case any defendant may, with the assent of the court, waive a jury trial and submit the trial of such case to the court, whose finding shall have the force and effect of a verdict of a jury."

The provision, "that in every criminal case any defendant may, with the assent of the court, waive a jury trial and submit the trial of such case to the court, whose finding shall have the force and effect of a verdict of a jury," first appeared in the 1945 Constitution. We must determine its effect.

In Singer v. United States, 380 U.S. 24, at 33 and 34, 85 S.Ct. 783, at 789, 13 L.Ed. 2d 630 (1964), the unanimous Supreme Court of the United States cited Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), with approval, as follows:

"The issue whether a defendant could waive a jury trial in federal criminal cases was finally presented to this Court in Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854. The *Patton* case came before the Court on a certified question from the Eighth Circuit. The wording of the question, *id.*, at 287, 50 S.Ct. at 254, is significant:

'After the commencement of a trial in a federal court before a jury of twelve men upon an indictment charging a crime, punishment for which may involve a penitentiary sentence, if one juror becomes incapacitated and unable to further proceed with his work as a juror, can defendant or defendants and the government through its official representative in charge of the case consent to the trial proceeding to a finality with 11 jurors, and can defendant or defendants thus waive the right to a trial and verdict by a constitutional jury of 12 men?'

The question explicitly stated that the Government had agreed with the defendant that his trial should proceed with 11 jurors. The case did not involve trial before a judge alone, but the Court believed that trial before 11 jurors was as foreign to the common law as was trial before a judge alone, and therefore, both forms of waiver

'in substance amount[ed] to the same thing.' *Id.*, at 290, 50 S.Ct. at 255. The Court examined Art. III, § 2, and the Sixth Amendment and concluded that a jury trial was a right which the accused might 'forego at his election.' *Id.*, at 298, 50 S.Ct. at 258. The Court also spoke of jury trial as a 'privilege,' not an 'imperative requirement,' *ibid.*, and remarked that jury trial was principally for the benefit of the accused, *id.*, at 312, 50 S.Ct. at 263. * * *" Thus, the federal rule is that a defendant may waive the privilege of trial by a jury of twelve men.

We recognize that the provisions for jury trial in the United States Constitution are not the same as those stated in the Constitution of Missouri. However, we are persuaded by the following language from Patton v. United States, supra, 281 U.S. 276, at 290, 50 S.Ct. 253, at 255: "It follows that we must reject *in limine* the distinction sought to be made between the effect of a complete waiver of a jury and consent to be tried by a less number than twelve, and must treat both forms of waiver as in substance amounting to the same thing. In other words, an affirmative answer to the question certified logically requires the conclusion that a person charged with a crime punishable by imprisonment for a term of years may, consistently with the constitutional provisions already quoted, waive trial by a jury of twelve and consent to a trial by any lesser number, or by the court without a jury."

▆▆▆ We agree that complete waiver of a jury and consent to be tried by less than twelve jurors in substance amount "to the same thing." We construe the provisions of Art. I, § 22(a), supra, as they apply to criminal cases, to mean that "the right of trial by jury as heretofore enjoyed shall remain inviolate;" but that:

(1) In *every* criminal case any defendant may, with the assent of the court, waive a jury trial and submit the trial of such case to the court, *or* may, with the assent of the court, waive a jury of twelve

citizens and submit the trial of such case to a jury consisting of less than twelve citizens; and

▆▆▆ In courts *not of record*, a defendant may be tried, *without his waiver or consent*, by a jury of less than twelve citizens if such procedure is prescribed by law.

▆▆▆ We hold that the jury verdict, rendered by *eleven* citizens in this case, is constitutionally valid. The Mansfield, Meyers and Sanders cases, supra, should no longer be followed.

▆▆▆ Defendant next contends his constitutional rights to a speedy trial were denied. The crime was committed February 20, 1967. The information was filed May 17, 1967. The trial commenced October 9, 1967. The point is without merit.

▆▆▆ Defendant next contends his "constitutional rights to obtain witnesses were violated." He states that because "of his incarceration pending the trial of this case, [he] was unable to return to the neighborhood * * * to seek out and learn the identity of the persons he had been with in order to secure process to compel their attendance at the trial." We reject this novel contention without further comment.

▆▆▆ Defendant next contends that his "rights to a trial by an impartial jury were violated" because "the judge exchanged pleasantries and engaged in conversations with various members of the jury from the bench." We have searched the record and have found nothing which could have prejudiced defendant. The point is without merit.

Defendant next contends that the trial court erred in admitting into evidence statements made by him to police officers at the time of his arrest.

Roger Baldwin, the arresting officer, testified as follows:

"Q. And after you told him he was under arrest, did you advise him of his constitutional rights? A. I did.

Q. What did you say to him?

A. I advised him he was under arrest suspected of murder. I told him he had the right to remain silent, that any statement made by him would be used against him in a court of law. I advised him of his right to have counsel, his right to have counsel present while being questioned, and if he could not afford an attorney, one would be furnished by the court, if he so desired.

Q. And at that time, did he indicate in any way he wanted a lawyer? A. No, he did not.

Q. Did he indicate in any way he didn't want to talk to you?

A. No, he did not.

Q. After you so advised him and placed him under arrest did he say anything at that time?

A. He stated words to the effect, why do you want me, what do you want me for.

Q. Did he say anything else at this time?

A. I asked him where he had been at that evening. He stated he had come straight home from work and hadn't left the house.

Q. At the time you placed Mr. McGee under arrest, what was he wearing? A. He was in his underclothing.

Q. And prior to your conveying him from that location, did you have him get dressed? A. I did.

* * * * * *

Q. When you told Mr. McGee to get dressed, did he say anything about his clothing? A. No, sir.

Q. Did you ask him anything about his clothing?

A. Yes. I observed some clothes in a chair at the foot of the bed, and I asked him if these were the clothes that he had been wearing, and he stated, yes."

In Miranda v. Arizona, 384 U.S. 436, at 444, 86 S.Ct. 1602, at 1612, 16 L.Ed.2d 694 (1966), the Supreme Court of the United States stated that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. * * * The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. * * *"

The Supreme Court of the United States further stated in 384 U.S. 436, at 475, 86 S.Ct. 1602, at 1628:

"If the interrogation continues without the presence of an attorney and a statement is taken a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. State of Illinois, 378 U.S. 478, 490, n. 14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and we re-assert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders.

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. A statement we made in Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884,

890, 8 L.Ed.2d 70 (1962), is applicable here:

'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' "

We hold that, although the Miranda warnings were given to defendant, there is *nothing* in the record to show a Miranda waiver of the privilege against self-incrimination and right to counsel. Cf. State v. Auger, Mo.Sup., 434 S.W.2d 1; Anderson v. State, 6 Md.App. 688, 253 A.2d 387 (and cases cited); People v. Johnson, 75 Cal. Rptr. 401, 450 P.2d 865 (and cases cited); State v. Kremens, 52 N.J. 303, 245 A.2d 313; and 19 Am.Jur., Proof of Facts, § 23. The admission of Officer Baldwin's testimony, supra, constitutes federal constitutional error under Miranda.

However, based on the evidence in the record of this case, we are "able to declare a belief that * * * [the federal constitutional error] was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed. 2d 705 (1967). See Mause, Harmless Constitutional Error: The Implications of Chapman v. California, 53 Minn.L.Rev. 519 (1969).

Defendant, voluntarily and of his own free will, elected to testify in his own behalf. He testified, *on direct examination,* as follows:

"Q. Mr. McGee, when the policeman woke you up, could you recognize any of the policemen that came into your place there as having been the men here in court? A. I recognized only one.

Q. Did the officers say anything to you? A. They did.

Q. And what was said?

A. They said, 'We would like to take you down to the station to talk to you', and I inquired about what they said.—Homicide; I said, 'what do you want me for?' They said, 'we just like to investigate and talk to you about the murder of Ida Rooks.'

Q. Up to that time, Mr. McGee, had you ever heard from anybody anything about Ida Rooks being dead? A. No, I didn't.

Q. What happened after that?

A. Well, after, or before we left the house, the police asked me did I have a girl friend. I said, 'yes.' I told him her name was Ida Rooks, and then in the process of me getting up, they were saying something, because I don't know what it was, I was awake, but I just don't know what it was. They asked me, say, 'are these your clothes here that you wore today?' and I say, 'yes.' They said, 'we would like for you to put them on.'

Q. Did you do that? A. I did.

Q. And did you go with the officers? A. I did."

■ In this situation, could defendant possibly be constitutionally prejudiced by Officer Baldwin's testimony? We think not. We hold that a defendant may not testify to facts, complained of as self-incriminating when elicited by the prosecution, and then successfully assert that he has been deprived of a fair trial.

In Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900), a case not applicable on the facts but persuasive here, the Supreme Court of the United States said at 476, 20 S.Ct. at 1000: "It would be trifling with the administration of the criminal law to award * * * [the defendant] a new trial because of a particular error committed by the trial court, when in effect he has stated under oath that he was guilty of the charge preferred against him."

In Murray v. United States, 53 App.D.C. 119, 288 F. 1008, cert. denied, 262 U.S. 757, 43 S.Ct. 703, 67 L.Ed. 1218 (1923), the

Court cited Motes v. United States, supra, and said at 1014:

"Not only this, but the defendant, when upon the stand in his own behalf, testified to substantially the same facts, although more in detail, as related by the witness, and in addition said that he made the statement to the officer that the latter said he did. This would cure the error in receiving the evidence, if any there were. * * *"

A similar rule is followed in Missouri. State v. Ussery, 357 Mo. 414, 208 S.W.2d 245, 246, 247; State v. Brown, Mo.Sup., 404 S.W.2d 179, 182; State v. Walker, Mo.Sup., 416 S.W.2d 134, 140.

In Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1925), a case not applicable on the facts but persuasive here, the Supreme Court of the United States said at 499, 46 S.Ct. at 568:

"The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf, and not for those who do. * * * We can discern nothing in the policy of the law against self-incrimination which would require the extension of immunity to any trial, or to any tribunal, other than that in which the defendant preserves it by refusing to testify."

The judgment is affirmed.

HENLEY, C. J., and FINCH and HOLMAN, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

MORGAN, J., dissents and concurs in separate dissenting opinion of SEILER, J.

STORCKMAN, J., absent.

SEILER, Judge (dissenting).

The majority opinion approving the 11 man jury is based on the proposition that complete waiver of the jury and consent to be tried by the court on one hand and consent to be tried by less than 12 jurors on the other, in substance amount "to the same thing", and since the 1945 Constitution permits the former, it therefore permits the latter. I respectfully dissent, and in doing so, ask the question, do they amount to the same thing?

In arriving at its conclusion, the majority opinion does not demonstrate or explain how they are the same thing, but states that it is "persuaded" by certain language quoted from Patton v. United States, 281 U.S. l.c. 290, 50 S.Ct. 253.[1] In the Patton case the government was trying to establish a distinction between complete waiver of a jury and consent to be tried by a jury of less than 12. The government was arguing that even if the United States Constitution made it impossible to waive a jury altogether, nevertheless in the Patton case, where the trial proceeded by agreement with 11 jurors after the twelfth juror became sick, this was not a substantial enough departure from the constitutional requirements so that it could not be done, see government's argument, 281 U.S. l.c. 284 and 286, 50 S.Ct. 253. In other words, the government was contending that even if a jury *cannot* be waived altogether, this

---

[1]. The opinion in the Patton case did not receive a carrying vote. Of nine justices, three concurred in result. The chief justice took no part. One justice died before the case was handed down and his successor had not yet been appointed. See 281 U.S. l. c. 313, 50 S.Ct. l. c. 263 and 281 U.S. p. III, 50 S.Ct. p. iii.

While the Patton case was cited with approval in Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630, that was a case where the defendant was insisting he be tried by the court without a jury even though the government would not agree. The Patton case was not cited on the point relied upon by the majority opinion here. It was cited as holding that in some instances a defendant can waive the right to trial by jury, but as dispelling any "notion that the defendant had an absolute right to demand trial before a judge sitting alone", 380 U.S. l. c. 34, 85 S.Ct. l. c. 789. That is not involved in the present case.

did not prevent a trial with 11 jurors where the defendant, judge, and prosecutor agreed to it. This is the reverse of the present case, where the state is contending that because a jury *can* be waived altogether, it follows automatically there can be a trial with less than 12 jurors.

I respectfully submit the quotation from the Patton case which the majority opinion considers decisive was not a holding or a determination of a point at all, but was nothing more than an approach used by the court to state the problem before it and narrow the issue to be decided. It will be seen from the Patton opinion that the court first determined what was meant by the phrase "trial by jury". It determined that at common law there were three essentials: first, a body of 12, neither more nor less; second, under superintendence of a judge, and third, a unanimous verdict, 281 U.S. l.c. 288–290, 50 S.Ct. 253. The court said these requisites demonstrated " * * * the unassailable integrity of the establishment of trial by jury in all its parts, and make clear that a destruction of one of the essential elements has the effect of abridging the right in contravention of the Constitution. * * * " Then the court made the statement which is quoted on page 273 of the majority opinion about having to reject the distinction sought to be made (by the government), because whether consent to be tried by less than 12 jurors was or was not the same thing as trial by the court without a jury, if the question certified to the court were answered in the affirmative, a defendant could constitutionally do either. There was no object in the court's deciding if there were a distinction between the two; whether they were or were not the same thing, the court still had the same problem facing it: if either one were permitted to be used it destroyed the essential elements of trial by jury at common law. Even if the court were to accept the distinction advanced by the government it would not eliminate the problem. This is why the court treated both waiver of the jury altogether and waiver of part of the jury as amounting to the same thing.

That the Patton court in the statement quoted intended no such meaning as ascribed by the majority opinion is shown by the language of Chief Justice Warren in the Singer case where he points out that the Patton case actually did not involve trial before a judge alone, but that to the court the idea of a trial before a jury of 11 jurors "was as foreign to the common law as was trial before a judge alone", and, therefore, both forms of waiver "in substance amount[ed] to the same thing" —i. e., both something entirely foreign to the common law idea of trial by jury. Both a rock and a horseshoe are foreign to floating on water, but this does not mean they are in substance the same beyond that limited respect.

The Patton court then solved the problem by concluding the constitutional provisions in the United States constitution were not jurisdictional, "but were meant to confer a right upon the accused which he may forego at his election", 281 U.S. l.c. 298, 50 S.Ct. l.c. 258. This being the case, there was no need for the Patton court to analyze whether a complete waiver of a jury and submission to the court, and a trial by a jury of less than 12 amounted to the same thing, since in either event there could be a waiver by the defendant. I respectfully submit the quoted portion of the Patton opinion does not amount to a holding that waiver of a jury and consent to be tried by the court, and consent to be tried by a jury of less than 12, do in substance amount to the same thing in the sense used by the majority opinion. The point was not reached in the Patton case. The opinion was not subscribed to by a majority of the justices and, I respectfully submit, is not authority on which to overrule three decisions of this court which hold exactly contrary to the result reached by the majority opinion.

I return to the question: are complete waiver of a jury and consent to be tried by

the court, and consent to be tried by less than 12 jurors in substance the same thing, and since our constitution now permits the former, does it thereby permit the latter?

Not according to the language of the 1945 Constitution, Art. I, Sec. 22(a). After declaring "That the right of trial by jury as heretofore enjoyed shall remain inviolate", the constitution provides for an exception, saying, "provided that a jury for the trial of criminal and civil cases in courts not of record may consist of less than twelve citizens as may be prescribed by law * * *." This is the only exception it provides. It is limited to courts not of record. The clear implication is that it does *not* apply to courts of record. Courts of record are excluded by the failure to mention them. The conclusion is inescapable that in courts of record the jury must be composed of 12. There is no such implied limitation in the federal constitutional provisions as to jury trials in criminal cases, Art. III, Sec. 2 and Sixth Amendment, United States Constitution. The fact that there can be less than 12 jurors in a federal criminal case is not controlling. We are construing the Missouri constitution. In addition to what I have already attempted to point out as the flaws in relying on the Patton case for the basis on which the majority opinion rests its conclusion, one can hardly believe that if there had been before the court in the Patton case a provision in the federal constitution such as we have in the Missouri constitution which limits juries of less than 12 to courts not of record, that the United States Supreme Court would not have taken it into consideration and discussed it before concluding there could be juries of less than 12 in courts of record in criminal cases. We are dealing with what the Missouri constitution provides and I respectfully submit that we cannot ignore the proviso to which I have referred and its implications.

The Missouri constitutions of 1820 and 1865 provided simply "That the right of trial by jury shall remain inviolate", Art. XIII, Par. 8, 1820 Constitution; Art. I, Sec. XVII, 1865 Constitution. The 1875 Constitution provided exactly the same and then went on to permit the innovation of a jury of less than 12 in courts not of record, Art. II, Sec. 28. The language read " * * * but a jury for the trial of criminal or civil cases in courts not of record, may consist of less than twelve men as may be prescribed by law * * *." This same language and its implications were carried over into the 1945 Constitution.

We can safely assume that the many prominent and able lawyers, some of whom had been judges, in the membership of the 1943–1944 Constitutional Convention which drafted the proposed constitution, adopted in 1945, were familiar with the Mansfield, Meyers and Sanders cases, all holding that a jury in a criminal trial could not be less than 12.[2] We have searched the Debates of the Constitutional Convention and have been unable to find any discussion about permitting a defendant in a felony case to be tried by a jury of less than 12. There was discussion about the new provision giving the defendant the right to waive a jury trial. It was presented as granting the defendant an additional right, Debates of the Constitutional Convention, pp. 1215, 5724; State v. McClinton (Mo.Sup. banc) 418 S.W.2d 55, 61. There is nothing to indicate it was regarded by any delegate as authorizing a jury of less than 12. There was discussion about whether the requirement of a unanimous verdict should be continued and the possibility of a ten-man verdict was mentioned, Debates, pp. 5720, 5722, 5728. But the possibility of a jury of less than 12 in a felony case, by agreement or otherwise, apparently did not occur to the delegates.

2. Of the 83 district delegates and delegates at large making up the Constitutional Convention, 40 were lawyers, almost half the entire body, Official List of Delegates, Official Manual of Missouri, 1943–1944, pp. 134–35.

The force of the reasoning in the Mansfield and the Sanders cases, decided in 1867 and 1922, respectively, may well still have been operating in their minds. These two cases involved almost exactly the same situation as in the present case—a felony trial, where all concerned agreed to proceed with 11 jurors, which was done, and a guilty verdict returned. In Mansfield, the court said, in part, 41 Mo. 1.c. 478: " * * * His right to be tried by a jury of twelve men is not a mere privilege; it is a positive requirement of the law. He can unquestionably waive many of his legal rights or privileges * * * but he has no power to consent to the creation of a new tribunal unknown to the law to try his offense. The law in its wisdom has declared what shall be a legal jury in the trial of criminal cases; that it shall be composed of twelve; and a defendant * * * cannot be permitted to change the law, and substitute another and a different tribunal to pass upon his guilt or innocence * * * If one juror can be withdrawn, there is no reason why six or eight may not be * * * It has been found necessary and wise to institute trial by jury as a shield and safeguard for the protection of prisoners accused of crime, and they are not to be allowed even by consent to dispense with or forego that protection guaranteed to them by law."

In the Sanders case, at 243 S.W. 1.c. 772, the court said: " * * * and only in courts not of record in criminal and civil cases may a jury consist of less than 12 men. The right to a jury thus constituted is not one which the accused can waive, but must be accorded to him to afford him such a trial as is contemplated by the Constitution. A different construction would run counter to the interpretation that has heretofore been given this portion of our organic law as to the inviolability of the right of trial by jury as heretofore enjoyed. * * * "

The Mansfield, Meyers and Sanders cases, which have declared the law of Missouri for over one hundred years, obviously view the requirements as to jury trial laid down in the Missouri constitution differently from the way the United States Supreme Court regards the jury provisions of the federal constitution with respect to federal criminal trials. However, the provisions in the two constitutions are decidedly different. The Missouri constitution gives authority for juries of less than 12 only in courts not of record, which means that in felony cases a common law jury is required—a body of 12, neither more nor less. I respectfully submit we should not overturn our long-settled construction of the Missouri constitution in this regard on the basis of a remark in a United States Supreme Court decision which does not actually reach the problem before us at all.

Again we ask, are complete waiver of a jury and consent to be tried by less than 12 jurors in a criminal case the same thing? The waiver provision in the 1945 Constitution gives the defendant the right to waive a jury *and* submit the trial to the court. The one must go with the other. The practical effect is the substitution of the trial judge for the jury as a fact-finding agency. There is a vast difference between waiving a jury entirely *and* submitting the case to the court, as compared to going to trial before a jury of 11 or 8 or 5, which would be permissible under the majority opinion. In one the trial would be conducted by one who has the tradition, sense of responsibility and training of a judge, whose quality of deliberation should be better, who is likely to weigh the evidence with considerably more care than a jury, and who is more insulated from extrajudicial pressures and community hostility. In the other, there would be part of a jury, some unknown lesser number than 12, which would be the same as the parties creating a new tribunal, unknown to the constitution or the law.[3] Trial by jury is

3. Other distinctions are pointed out in Duncan v. Louisiana, 391 U.S. 145 at 156 and 187–188, 88 S.Ct. 1444, 20 L.Ed.2d 491.

too securely preserved by the Missouri constitution to countenance this.[4] As pointed out in The American Jury, Kalven & Zeisel, 1966, p. 23, the stakes are often high in criminal cases and there is always the possibility of error. It is not sound as a long-range proposition to place the life or liberty of the defendant, even with his consent, in the hands of a few laymen.

It also is significant that the legislature has acted in accord with the holdings of the Mansfield, Meyers and Sanders cases, even after the adoption of the 1945 Constitution with its waiver provision. In 1957 the legislature enacted what is now Sec. 494.065, RSMo 1959, V.A.M.S., providing that wherever there is a protracted trial, in either criminal or civil cases, the court can require a thirteenth juror, as alternate, to be qualified, hear the evidence and be ready to step in. The legislature did not provide that the parties, if they saw fit, could agree on a lesser number than 12. This would indicate, I submit, the legislature believed the only way it could constitutionally provide for a trial to continue if one juror had to drop out was to enact a procedure whereby the trial could proceed with a full complement of jurors.

In my opinion, a defendant in a felony case, when tried by a jury, cannot under the 1945 Constitution, waive a jury of 12 and it was reversible error for the court to proceed with 11 jurors. I, therefore, respectfully dissent.

4. There is also an important practical aspect present where the Habitual Criminal Act is involved, as was the case here. The defendant in a habitual charge knows the court and not the jury will assess the punishment. The defendant will not want to offend the judge if he can avoid it. So when a juror becomes ill in the second or third day of trial, unless the defendant is willing to go along with proceeding with less than 12 jurors he runs the risk of having the valuable time of

the judge wasted, because if the defendant does not agree the judge must declare a mistrial and start all over. In many circuits, this means starting over before the same judge, perhaps within a day or so. A defendant might feel under considerable compulsion not to run the chance of irritating the judge, and agree to go ahead with a jury of less than 12 when he otherwise would not have done so. A defendant should not have to bargain away a trial by a complete jury.