**STATE of Missouri, Respondent.**

v.

**Steven BROSSEIT, Appellant,**

**No. WD 54059.**

Missouri Court of Appeals,
Western District.

Jan. 27, 1998.

David Simpson, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for respondent.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LOWENSTEIN, Judge.

Steven Brosseit ("Brosseit") was jury-tried and convicted of attempted second degree burglary in violation of § 569.170, RSMo.

1994. Brosseit was sentenced as a prior offender to 5 years in prison. On appeal, Brosseit maintains that the trial court erred in (1) sustaining the prosecution's objection to a cross-examination question of Leo Burke; and (2) denying his motion to suppress statements made by Brosseit to police officers at the scene of the arrest and to the detective at the station.

On April 9, 1996, at approximately 3:00 a.m., three Blue Springs police officers responded to a call regarding a suspicious vehicle parked in a stall at Soapy's Car Wash. Upon arrival, the officers saw a Chevy Suburban parked in one of the stalls with the driver's side door open and nobody inside. The officers then looked up and saw Brosseit in the rafters of the car wash, and shouted something to the effect of "Hey, what are you doing up there?" Brosseit responded that he was catching pigeons and that he had the owner's permission to do so. The officers told him to come down and he complied.

A search of the rafters where Brosseit was found revealed a pair of wirecutters, some gloves, and an alarm speaker that had its wires cut. The owner of the car wash, Leo Burke, arrived and said that Brosseit did not have permission to catch pigeons in the rafters. The police arrested Brosseit, and a search of his pockets revealed a small flashlight and a pocketknife. At the police station, a detective informed Brosseit of his Fifth Amendment rights and asked him if he understood them. Brosseit indicated that he did and the detective proceeded to ask him questions about the night of April 9, 1996. After being questioned for a while, Brosseit told the detective that he wanted an attorney.

At trial, Brosseit testified in his own behalf and admitted that he had lied about hunting pigeons that night. Instead, he claimed that he had been drinking and that he pulled into the car wash and climbed into the rafters to avoid a DWI charge. Defense counsel filed a motion to suppress Brosseit's pigeon-hunting story, alleging that Brosseit's statements to the officers at the car wash and the detective were obtained in violation of his Fifth Amendment rights. The trial court denied the motion. The jury found him guilty, and this appeal followed.

## I.

In his first point on appeal, Brosseit argues that the trial court erred in sustaining the prosecution's objection to defense counsel's cross-examination question of Leo Burke. At trial, the prosecution elicited evidence that the alarm system at Soapy's Car Wash had not been worked on since it was installed. Defense counsel sought to impeach Burke's testimony by asking Burke if he recalled telling someone that he had worked on the alarm two days prior to April 9th, 1996. The trial court stated that the defense could "ask him if he had any work done around this time, but that if the defense was talking about some other time, it's not relevant, in my opinion." The trial court then allowed defense counsel to make an offer of proof. In the offer of proof, defense counsel asked Burke if he remembered talking with Kathy Schneider and another woman at the car wash. Burke indicated that he did, but that he did not recall what they talked about. Defense counsel then asked Burke if he recalled telling Schneider that he had repaired damage to the alarm from previous break-ins. Burke stated that there had been no damage to the alarm and that, "[n]obody's ever been up and messed with the alarm before." Defense counsel asked no other questions of Burke and called no other witnesses.

Both the United States and the Missouri Constitutions guarantee criminal defendants the right to confront their accusers and conduct cross-examination. *State v. Dunn,* 817 S.W.2d 241, 244 (Mo.1991). However, the right is not without limitation. *Id.* The extent of cross-examination for purposes of impeachment is a matter committed to the discretion of the trial court. *State v. Dunn,* 577 S.W.2d 649, 653 (Mo.1979); *State v. Michalski,* 725 S.W.2d 620, 622 (Mo.App.1987). On appellate review, the trial court's ruling on such issues will only be set aside where an abuse of discretion is shown. *Id.*

Generally, appellate courts will not review excluded evidence without an offer of proof. *Frank v. Environmental Sanitation*

*Management, Inc.,* 687 S.W.2d 876, 883–884 (Mo. banc 1985). In order to preserve any possible error, the offer of proof must provide the appellate court with a record from which it can determine whether the exclusion was erroneous and whether it was prejudicial. *State v. Spulak,* 720 S.W.2d 396, 399 (Mo.App.1986). If prejudice is not demonstrated, the error, if any, cannot be said to have materially affected the merits of the action. *Landers v. Huffman,* 914 S.W.2d 394, 397 (Mo.App.1996). An appellate court cannot reverse a judgment unless it finds that error was committed against the appellant materially affecting the merits of the action. Rule 84.13(b).

In the offer of proof, Burke stated that no previous work had been done on the alarm system. This statement alone does not demonstrate that Brosseit was prejudiced. Defense counsel offered no other testimony and did not indicate what Schneider would have testified to if she had been brought in. There is nothing in the record from which this court can conclude that Brosseit was prejudiced. Point I denied.

## II.

In his second point on appeal, Brosseit argues that the trial court erred in denying his motion to suppress the statements he made to both the police officers at the scene of the arrest and to the detective at the station.

■ In reviewing the trial court's order on a motion to suppress, the appellate court looks only to whether the evidence was sufficient to support that order. *State v. Williams,* 861 S.W.2d 670, 674 (Mo.App. 1993). The appellate court considers all facts and reasonable inferences favorable to the challenged order and disregards contrary evidence and inferences, if the evidence is otherwise sufficient to support the trial court's order. *Id.*

■ First, Brosseit argues that the police officers at the car wash should have informed him of his *Miranda* rights prior to asking him, "Hey, what are you doing up there," because the officer's knew the question could invoke an incriminating response. Brosseit's entitlement to *Miranda* warnings is conditional upon the existence of a "custodial interrogation" which requires both custody and interrogation. *State v. Brown,* 814 S.W.2d 304, 308 (Mo.App.1991). At most, the question by the officers at the car wash was investigatory in nature. A person is not in custody when he is simply being asked investigatory questions by the police. *State v. Crane,* 841 S.W.2d 271, 273 (Mo.App.1992). The officers' question did not constitute a custodial interrogation. The trial court did not err on this point.

■ Brosseit also argues that his statement to the detective at the police station should have been suppressed because he did not validly waive his Fifth Amendment rights after being informed of them by the detective. Although a valid waiver will not be presumed, an explicit statement of waiver is not invariably necessary to support a finding that Brosseit waived his right to remain silent or right to counsel. *State v. Miller,* 714 S.W.2d 815, 824 (Mo.App.1986); *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). If a defendant is informed of his *Miranda* rights and understands those rights, "... and thereafter makes voluntary statements, it is absurd to say that such person has not made a knowing and intelligent waiver of his right to remain silent." *State v. Walton,* 899 S.W.2d 915, 920 (Mo.App.1995)(quoting *State v. Schnick,* 819 S.W.2d 330, 336 (Mo.1991)). The police are required to advise the defendant of his rights but may "leave it to him to claim these rights." *State v. Bittick,* 806 S.W.2d 652, 657 (Mo.1991) (citation omitted). After informing a defendant of his *Miranda* rights, the police have no duty to counsel the defendant as to the course of action which is wisest from his standpoint. *Id.*

■ Brosseit relies upon *State v. McGee,* 447 S.W.2d 270 (Mo.1969), to argue that he did not make a valid waiver of his *Miranda* rights. In *McGee,* the Supreme Court of Missouri held that the defendant had not made a valid waiver of his *Miranda* rights. *Id.* at 275. However, the court held that the error was harmless beyond a reasonable doubt because the defendant, voluntarily and of his own free will, elected to testify on his

own behalf to the same facts that he complained of as self-incriminating when elicited by the prosecution. *Id.* In the present case, Brosseit also testified to the same facts that he complains of as self-incriminating when elicited by the police officers. At trial, he testified that he told the police officers that he was hunting pigeons but that he was lying at the time in order to avoid a possible DWI charge.

Upon consideration of the record, this court finds that there is sufficient evidence to support the trial court's finding that Brosseit's waiver was knowing and voluntary.

Even if Brosseit's waiver had not been valid, his argument fails because any error was harmless due to his own testimony. Point II denied.

Judgment affirmed.

All concur.